UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

RAFAEL MEDINA RAMIREZ,                              :
                                                    :
                              Plaintiff,            :
                                                    :     REPORT AND
            -against-                               :     RECOMMENDATION
                                                    :
NAHID FURNITURE INC, ALI FURNITURE  :                     24-CV-4907 (RER)(MMH)
CORP, NAHID FABRICS FASHION &       :
FURNITURE INC, ABIDUL ISLAM ALI and  :
SAZZAD ALI,                          :
                                                    :
                              Defendants.  :
------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Rafael Medina Ramirez filed this action against Corporate Defendants Nahid Furniture Inc. ("Nahid Furniture"), Ali Furniture Corp ("Ali Furniture"), and Nahid Fabrics Fashion & Furniture Inc. ("Nahid Fabrics"), and Individual Defendants Abidul Islam Ali, and Sazzad Ali, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.* (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). (*See generally* Mot., ECF No. 11.) The Honorable Ramon E. Reyes, Jr. referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part and denied in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

I.      **BACKGROUND**

A.      **Facts**

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true for the purposes of establishing liability. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

At all relevant times, the Corporate Defendants were New York corporations who owned and operated a furniture store located at 1051 Liberty Avenue, Brooklyn, New York 11208 (the "Furniture Store"), their principal place of business. (*See* Compl., ECF No. 1 ¶¶ 10–12, 29–30.) Abidul Islam Ali and Sazzad Ali were the owners, officers, and/or agents of the Corporate Defendants who determined the wages and compensation of the Corporate Defendants' employees; had authority to hire and fire them; and signed contracts on behalf of the Corporate Defendants. (*Id.* ¶¶ 13–16, 19, 21–24, 27.) Abidul Islam Ali and Sazzad Ali hired Plaintiff; controlled his working conditions; set his work schedule, pay rate, and working hours; and assigned Plaintiff to work locations. (*Id.* ¶¶ 17–18, 31.)

Plaintiff worked for Defendants at the Furniture Store from May 2015 through November 2023 as an assembler, delivery person, and general laborer. (*Id.* ¶¶ 3, 39.) Plaintiff regularly worked more than 40 hours per week. (*Id.* ¶ 42.) Throughout his employment, Plaintiff typically worked six days per week, from 10:00 a.m. to between 7:00 p.m. and 9:00 p.m., with infrequent lunch breaks of less than 30 minutes. (*Id.* ¶¶ 43, 45.) Defendants paid Plaintiff a fixed weekly salary of $700.00 with no premium for overtime hours that Plaintiff worked. (*Id.* ¶ 44.)

Plaintiff alleges that Defendants failed to pay him applicable minimum wage, spread of hours wages, and overtime compensation. (*See id.* ¶¶ 4, 6, 42, 61–62, 66–67, 70.) Plaintiff

further alleges that Defendants failed to provide him with required wage notices and statements.  (*See id.* ¶¶ 46–48.)

### B.     Procedural History

Plaintiff initiated this action on July 15, 2024.  (*See generally id.*)  Plaintiff served the summons and Complaint on Ali Furniture and Nahid Fabrics on September 10, 2024; on Abidul Islam Ali and Sazzad Ali on September 30, 2024; and on Nahid Furniture on October 1, 2024.  (ECF Nos. 5–6.)  After Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against them on January 28, 2025.  (*See* ECF No. 9.)

Plaintiff moved for default judgment on June 3, 2025, seeking unpaid minimum and overtime wages under the FLSA and NYLL, statutory damages for wage statement and wage notice violations under the NYLL, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and a 15% increase penalty for unpaid judgments.  (*See generally* ECF No. 11.)  Judge Reyes referred the motion for report and recommendation.  (*See* June 6, 2025 Order Ref. Mot.)  The Court identified deficiencies in Plaintiff's motion related to the request for attorneys' fees and costs and directed Plaintiff to file supplemental documents.  (*See* Oct. 22, 2025 Order.)  Plaintiff submitted supplemental materials responsive to the Court's Order on November 3, 2025.  (*See* ECF No. 13.)

## II.     <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  *See* Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a

party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default. Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III. JURISDICTION & VENUE

### A. Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action."  *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  The Court has

4

original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims. 28 U.S.C. § 1367(a); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792 (PKC)(MMH), 2024 WL 4184485, at *3 (E.D.N.Y. Sept. 14, 2024), *adopted by* 2024 WL 4355485 (E.D.N.Y. Sept. 30, 2024) (cleaned up).

### B.      Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant[s.]" *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The three requirements for personal jurisdiction are: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)).

The Court has personal jurisdiction over Defendants. *First*, Plaintiff properly served the Corporate Defendants by delivering copies of the summons and Complaint to the New York Secretary of State. (*See* ECF Nos. 5-2, 5-3, 5-4.) This method of service complies with federal and state procedural rules for service on a corporation. Fed. Rs. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law § 306(b)(1). Further, after four unsuccessful but diligent attempts to serve the Individual Defendants personally, Plaintiff properly served Abidul Islam Ali and Sazzad Ali by affixing copies of the summons and

5

Complaint to the door of their usual place of abode and by mailing copies of the summons and Complaint by first-class mail to each of them at that residence. (*See* ECF Nos. 5, 5-1.) Plaintiff also served Abidul Islam Ali and Sazzad Ali by delivering copies of the summons and Complaint to a person of suitable age and discretion at the Furniture Store, their place of business, and by mailing the summons and Complaint by first-class mail to the same location. (*See* ECF Nos. 6, 6-1.) These methods of service follow federal and state rules for service on individuals. Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. §§ 308(2) and (4).

*Second*, the Court has general jurisdiction over the Corporate Defendants, because they are New York companies "'doing business' in New York." *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301)), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Though Plaintiff does not allege Abidul Islam Ali's or Sazzad Ali's domicile, the Court would have general jurisdiction over them if they were domiciled in New York. *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH), 2024 WL 4271234, at *4 (E.D.N.Y. Sept. 19, 2024) (citing *Francis*, 2018 WL 4292171 at *3), *adopted by* Order Adopting R. & R., *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707 (ENV)(MMH) (Dec. 5, 2024). If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302." *Weitsman v. Levesque*, No. 17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up). As alleged, Abidul Islam Ali and Sazzad Ali conduct business within the state and "own and operate" the Corporate Defendants, (Compl., ECF No. 1 ¶¶ 2, 13–14, 21–22), which sufficiently establishes specific jurisdiction. *Weitsman*, 2019 WL 7503022, at *3.

*Finally*, "[s]ince jurisdiction is proper for all Defendants under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. Each defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

For these reasons, the Court has personal jurisdiction over Defendants.

### C.      Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2). Venue is proper in this district because the failure to pay wages alleged in the Complaint occurred during Plaintiff's employment in Brooklyn, New York. (*See* Compl., ECF No. 1 ¶¶ 1, 2–5, 9, 39, 44.)

## IV.      PROCEDURAL COMPLIANCE

Plaintiff demonstrates substantial compliance with the Local Civil Rules' requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local rules.") (cleaned up). Generally, Plaintiff includes a notice of the motion (ECF No. 11), a memorandum of law in support of the motion (ECF No. 11-3), a supporting affidavit and exhibits (ECF No. 11-1), a copy of the Complaint (ECF No. 11-4), and a proposed judgment (ECF No. 11-9). *See* Local Civ. Rs. 7.1(a)(1)-(2), 55.2(a)(1)–(2). Plaintiff also submits a copy of the Clerk's certificate of default (ECF No. 11-6), proof of service of the Complaint (ECF No. 11-5), and proof of mailing the motion (ECF No. 12). *See* Local Civ. R. 55.2(a)(3). Plaintiff also provides a statement of damages, showing the proposed

damages and basis for each element of damages (ECF Nos. 11-7, 11-8, 13).  *See* Local Civ. R. 55.2(c).  Accordingly, the Court finds that Plaintiff has complied with this district's Local Civil Rules to provide adequate notice to Defendants.  *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as complaint with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Plaintiff also complies with the Servicemembers Civil Relief Act ("SCRA"), which requires, "[i]n a default judgment action, a plaintiff . . . to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit."  *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also* Loc. Civ. R. 55.2(a)(1)(B).  Plaintiff submits status reports from the U.S. Department of Defense Manpower Data Center confirming that Abidul Islam Ali and Sazzad Ali are not in the military.  (*See* Muholland Aff. Ex. G, ECF No. 11-10 (SCRA Searches).)  Accordingly, the Court finds that Plaintiff has complied with the SCRA.

## V.    **DEFAULT JUDGMENT FACTORS**

"Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment."  *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502

(PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, Defendants' "non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible against Defendants.

## VI.   LIABILITY

### A.   Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant

9

defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). In contrast, the NYLL establishes a six-year limitations period for wage claims. N.Y. Lab. Law §§ 198(3), 663(3). "The statute of limitations begins to run when an employee begins to work for the employer." *Esquivel*, 2023 WL 6338666, at *5. Plaintiff began working for Defendants in May 2015 and commenced this action on July 15, 2024. (*See* Compl., ECF No. 1 ¶ 3.) Therefore, in light of Defendants' default, Plaintiff may recover under the FLSA for any claims that accrued since July 15, 2021 and under the NYLL for any claims that accrued since July 15, 2018.

## B.    FLSA Coverage

To establish a minimum wage or overtime claim under the FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Solis*, 2024 WL 4271234, at *7 (cleaned up); 29 U.S.C. §§ 206(a), 207(a).

### 1.    Employer Subject to the FLSA

The Complaint alleges that Defendants were Plaintiff's employers within the meaning of the FLSA. (Compl., ECF No. 1 ¶¶ 32–33.) An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(a), (d). "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v.*

10

*Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207. These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively. *Sanchez v. Ms. Wine Shop*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

### a.     Corporate Defendants

An employer is an "enterprise engaged in commerce or in the production of goods for commerce" subject to the FLSA when the employer: (1) "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done [] not less than $500,000[.]"  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH), 2025 WL 3769328, at *5 (E.D.N.Y. Dec. 31, 2025), *adopted by* Order Adopting R. & R., *Martinez v. Golden Flow Dairy*, No. 21-CV-2421 (ENV)(MMH) (E.D.N.Y. Feb. 11, 2026).

Plaintiff properly pleads that the Corporate Defendants are employers subject to the FLSA under the enterprise coverage test.  *Perry*, 2022 WL 1018791, at *6.  The Complaint alleges that the Corporate Defendants operated the Furniture Store and "were directly and indirectly engaged in interstate commerce.  For example, Plaintiff and Defendants' other employees handled and purchased for the business cleaning items, installation tools, vehicles and paperwork that originated out of state" and "had a gross annual volume of revenue of not less than $500,000" between 2020 and 2024.  (Compl., ECF No. 1 ¶¶ 34–36.)  The Complaint

further alleges that Plaintiff "regularly handled goods in interstate commerce, such as cleaning supplies, vehicles and other tools and other supplies produced and originating from outside the state of New York." (*Id.* ¶ 40.) Plaintiff therefore plausibly alleges specific facts to establish that the Corporate Defendants' employees handle goods or materials that move "among the several States" and that their business generates sales over the statutory threshold. 29 U.S.C. § 203(b); *see id.* § 203(s)(1)(A); *see also, e.g.*, *Mercedes v. Underground Liquidation Inc.*, No. 23-CV-4766 (VEC)(RFT), 2024 WL 4710309, at *6 (S.D.N.Y. Aug. 12, 2024) (finding allegations that furniture store employees handled, or otherwise worked with tools, materials, equipment and goods that previously moved in interstate commerce sufficient to establish FLSA enterprise coverage), *adopted by* 2024 WL 4360558 (S.D.N.Y. Oct. 1, 2024). Accordingly, Plaintiff adequately alleges that the Corporate Defendants operate an enterprise engaged in commerce and are therefore subject to the FLSA.[2]

### b.      Abidul Islam Ali and Sazzad Ali

Plaintiff also successfully establishes that Abidul Islam Ali and Sazzad Ali were his employers within the meaning of the FLSA. "The FLSA contemplates that more than one employer may be responsible for violations of the statute." *Echevarria v. ABC Corp.*, No. 21-CV-4959 (JS)(ARL), 2023 WL 5880417, at *4 (E.D.N.Y. Sept. 11, 2023) (citation omitted), *adhered to on reconsideration*, No. 21-CV-4959 (JS)(ARL), 2024 WL 1639934 (E.D.N.Y. Apr. 16, 2024). For individual defendants, "[t]he underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees:

---

[2] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

'control over a company's actual operations in a manner that relates to a plaintiff's employment.'" *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). Courts also consider the "economic reality" of the employment relationship by analyzing "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Tapia*, 906 F.3d at 61–62 (applying the *Carter* factors to determine individual liability under the FLSA). "The test looks at the totality of the circumstances, and no individual factor is dispositive." *See Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *8 (E.D.N.Y. Mar. 24, 2022) (citing *Irizarry*, 722 F.3d at 105).

Plaintiff has shown that Abidul Islam Ali and Sazzad Ali qualify as employers under the FLSA because their "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110. Plaintiff alleges that Abidul Islam Ali and Sazzad Ali "own and operate" the Corporate Defendants and the Furniture Store and possessed substantial control over Plaintiff's working conditions, including his wages and compensation, whether he was hired or fired, his work schedule and pay rate, and his work assignments. (*See* Compl., ECF No. 1 ¶¶ 1, 2, 15–18, 23–26, 30.) These allegations are sufficient to establish that Abidul Islam Ali and Sazzad Ali were Plaintiff's employers within the meaning of the FLSA, and were therefore required to comply with the FLSA's wage provisions. *See Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *7 (E.D.N.Y. Sept. 26, 2024) (holding that individual

13

owners and operators of a corporation who set wages and the employer's operational schedule, and hired and fired employees, was an "employer" under the FLSA), *adopted by* Order Adopting R. & R., *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH) (E.D.N.Y. Jan. 15, 2025.).

Because Abidul Islam Ali and Sazzad Ali were jointly Plaintiff's employers, each of them is jointly and severally liable for any damages award to Plaintiff pursuant to the FLSA and the NYLL. *See Brito*, 2022 WL 875099, at *8.

### 2. Employee Covered by the FLSA

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)). The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a) (listing multiple exemptions); *see also id.* § 213(b)(11) (excluding from FLSA overtime pay requirements "a driver or driver's helper making local deliveries, who is compensated for such employment on the basis of trip rates, or other delivery payment plan."). Whether a plaintiff-employee's activities fall under such exemptions is a question of law. *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129–30, n.28 (2d Cir. 2020) (citing *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012)).

14

Plaintiff alleges facts that establish, as a matter of law, that he was engaged in non-exempt employment under the FLSA.[3]  Specifically, the Complaint alleges that Plaintiff was employed as "the delivery person, assembler and general laborer at the furniture store" for Defendants, and the Complaint does not suggest that he was paid by trip rates for any deliveries such that he should be exempted from the FLSA's overtime pay protections.  (Compl., ECF No. 1 ¶ 39.)  Further, employment in positions with similar duties is not exempt from the FLSA.  *See Park v. Sarang Moving Inc.*, No. 22-CV-5725 (DG)(RER), 2023 WL 11867085, at \*5 (E.D.N.Y. Aug. 2, 2023) (finding that FLSA statutory exemptions do not apply to plaintiff who was employed as a mover for out-of-state customers), *adopted by* Order Adopting R. & R. *Park v. Sarang Moving Inc.*, No. 22-CV-5725 (DG)(RER) (E.D.N.Y. Aug. 25, 2023); *see also* 29 C.F.R. § 541.23 ("The [§ 213](a)(1) exemptions . . . do not apply to manual laborers . . . .   Thus, for example, non-management production-line employees and non-management employees in . . . construction and similar occupations such as . . . construction workers and laborers are entitled to minimum wage and overtime premium pay under the [FLSA], and are not exempt under the regulations in this part no matter how highly paid they might be.").  Therefore, the Court does not find any basis for exempting Plaintiff's employment relationship from the FLSA's provisions.  Accordingly, Plaintiff qualifies for the protections of the FLSA.

---

[3] Defendants have not appeared in this case to assert or offer any facts to support a finding that Plaintiff is an exempt employee. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 n.7 (2d Cir. 2013) ("A claim of exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof in making any such claim.") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) and *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991)).

## C.    NYLL Coverage

To plead a NYLL claim, a plaintiff "must establish that [the] employment relationship with Defendants falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at *7 (quoting N.Y. Lab. Law § 190).  "Under the New York Labor Law, the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Solis*, 2024 WL 4271234, at *8; *see* N.Y. Lab. Law §§ 651(5)–(6).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee."  *Brito*, 2022 WL 875099, at *8 (internal quotation marks omitted) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  The Court has already determined that Defendants are Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B.1., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . Defendants are Plaintiff's employers within the meaning of the NYLL" as well.  *Perry*, 2022 WL 1018791, at *7.  Therefore, Plaintiff qualifies for the protections of the NYLL.

## D.    Statutory Violations

In the Complaint, Plaintiff alleges that Defendants violated the FLSA and NYLL overtime wage provisions (Counts 1 and 3), the FLSA and NYLL minimum wage provisions (Counts 2 and 4), and the NYLL provisions related to spread of hours pay, wage notices, and wage statements (Counts 5 through 7).  (*See* Compl., ECF No. 1 ¶¶ 49–78.)  However, the motion does not address or seek damages related to spread of hours pay (Count 5).  (*See* Mem.,

16

ECF No. 11-2 at 3, 6–9 (describing Plaintiff's damages); Mulholland Aff. Ex. D, ECF No. 11-7 (damages chart).) Accordingly, this claim is waived. *Esquivel*, 2023 WL 6338666, at *7.

### 1.    FLSA & NYLL Violations

#### a.    Unpaid Minimum Wages (Counts 2 and 4)

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *McLaughlin*, 2024 WL 4184485, at *9 (cleaned up). "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 41 (E.D.N.Y. 2015) (cleaned up). "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. "'If the defendant has defaulted, however, the court may presume that the plaintiff's recollection and estimates of the hours he or she worked are accurate.'" *Tzilin*, 2024 WL 4309775, at *9 (quoting *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 119 (E.D.N.Y. 2023)).

The Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover the highest minimum wage rate available at any given period of his employment. 29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9. Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a). While the Complaint alleges that Plaintiff was employed at the Furniture Store from May 2015 through November 2023 (Compl., ECF No. 1 ¶ 3), due to the applicable statutes of limitations, Plaintiff may recover for any unpaid wages from July 15,

17

2018 through November 15, 2023, when his employment with Defendants ended.  (*See* § VI.A., *supra*.)  However, because the Complaint does not allege the Furniture Store's size or Defendants' number of employees during the relevant period, the Court will use the applicable minimum wage rates for small employers.  *Espinoza v. Broadway Pizza & Rest. Corp.*, No. 17-CV-7995 (RA)(KHP), 2021 WL 7903991, at *6 (S.D.N.Y. Nov. 18, 2021) (applying small-employer minimum wage rate where complaint was silent about the number of defendant's employees), *adopted by* 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022); *Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *5 (S.D.N.Y. June 5, 2018) (same).[4]  During the relevant period, state and local minimum wage rates were higher than the federal minimum wage rate and thus the local rates apply.  *Compare* N.Y. Lab. Law § 652(1)(a)(ii) (for employers with fewer than ten employees, New York City minimum wage rates between $12.00 and $15.00 per hour) *and* 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii) (same) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for the purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Ms. Wine Shop*, 643 F. Supp. 3d at 371 (cleaned up).  Under the NYLL, the regular hourly wage rate for non-hospitality industry employees like Plaintiff who were paid on a weekly basis "shall be determined by dividing the total hours worked during the week into the employee's total earnings."  12 N.Y.C.R.R. § 142-2.16.  Plaintiff alleges that he was paid a "fixed weekly salary" of $700.00 from July 2018 until November 2023, for working 60 hours per week.  (*See*

---

[4] For this reason, the Court rejects Plaintiff's argument that the minimum wage rate for large employers should apply to him.  (*See also* § VII.B., *infra*.)

Compl., ECF No. 1 ¶ 44.)  Therefore, Plaintiff's regular hourly pay rate was $11.67 per hour (*i.e.*, $700.00 per week / 60 hours per week), which is less than the applicable local minimum wage rates.  N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(ii).

Accordingly, the Court respectfully recommends that Defendants should be liable for violations of the FLSA's and NYLL's minimum wage provisions.

### b.        Unpaid Overtime (Counts 1 and 3)

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Dejesus*, 726 F.3d at 88 (alterations omitted) (quoting 29 U.S.C. § 207(a)(1)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work."  N.Y. Lab. Law § 160. For non-hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek."  12 N.Y.C.R.R. § 142-2.2.  To state a plausible FLSA overtime claim, "plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.'"  *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)).  "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Defendants failed to pay him the requisite overtime pay.  Plaintiff alleges that between July 15, 2018 through November 2023, he typically worked

approximately 60 hours per week but Defendants did not pay him an overtime premium for any hours he worked each week over 40 hours.  (Compl., ECF No. 1 ¶¶ 3–4, 9, 44.)  The Court therefore respectfully recommends that Defendants should be liable for failure to pay overtime wages under the FLSA and NYLL.

### 2.    NYLL Violations

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number.  N.Y. Lab. Law § 195(1)(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked." *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195(3)).

"[A] technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023)) ("*Guthrie II*"), *aff'd*, 113 F.4th 300, 310–11 (2d Cir. 2024) ("*Guthrie III*").  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete,

particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To plausibly allege a WTPA violation, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm," *Guthrie III*, 113 F.4th at 308, and "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"  *Id.* at 307 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).  In other words, "the plaintiff-employee must support a plausible 'theory as to *how* he was injured by [the] defendants' failure to provide the required documents.'"  *Tzilin*, 2024 WL 4309775, at *11.

Here, "[t]hough the deficiencies in Defendants' provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrate[] how those technical violations led to either a tangible injury or something akin to a traditional cause of action, as required by the Supreme Court" or the Second Circuit.  *Guthrie II*, 2023 WL 2206568, at *6.  In the Complaint, Plaintiff alleges that Defendants failed to provide notices and statements containing certain information required by NYLL § 195.  (*See* Compl., ECF No. 1 ¶¶ 46–48).  However, "[w]ithout plausible allegations that [Plaintiff] suffered a concrete injury because of [Defendants'] failure to provide the required notices and statements, [Plaintiff] lacks standing to sue for that statutory violation."  *Guthrie III*, 113 F.4th at 311.  Further, "[a]lthough plaintiff's memorandum of law in support of his motion for default judgment avers that defendants' failure to provide him with a wage notice and wage statements denied him the right to know the conditions of his compensation, and that this resulted in the underpayment of wages . . ., this is not sufficient to overcome the deficiency in plaintiff's

Complaint." *Holder v. G&A Flaggers LLC*, No. 22-CV-7227 (DLI)(JRC), 2025 WL 1708086, at *7 (E.D.N.Y. Mar. 5, 2025) (citing *Butvin v. DoubleClick, Inc.*, No. 99-CV-4727, 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) ("A party is not entitled to amend his complaint through his memoranda.") *and Reading Int'l, Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) ("Absent the filing of an amended complaint that properly pleads the components of [the asserted claim], the Court will not consider this allegation.")), *adopted by* Order Adopting R. & R., *Holder v. G&A Flaggers LLC*, No. 22-CV-7227 (DLI)(JRC) (E.D.N.Y. Sept. 27, 2025). The Court thus respectfully recommends that Plaintiff's claims for Defendants' alleged violations of the NYLL's wage notice and wage statement provisions should be dismissed without prejudice for lack of standing.

## VII.    DAMAGES

### A.    Burden of Proof

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)) (cleaned up). "On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).

However, because the employee bears the burden to properly record a plaintiff's work hours, that plaintiff is not required to compute FLSA damages precisely. *Chacha v. Nueva*

*Era Flower Corp.*, No. 23-CV-3367 (AMD)(MMH), 2025 WL 2609246, at *13 (E.D.N.Y. Sept. 8, 2025) (cleaned up), *adopted by* 2025 WL 2775917 (E.D.N.Y. Sept. 30, 2025).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15; *see also Perry*, 2022 WL 1018791, at *3 ("In the context of a motion for default judgment on FLSA and NYLL claims, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (cleaned up).

A plaintiff who establishes claims under the FLSA and NYLL may not recover damages under both the FLSA and the NYLL for wages earned during the same period. *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH), 2024 WL 4131905, at *13 (E.D.N.Y. Sept. 10, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212 (DG)(MMH) (E.D.N.Y. Sept. 30, 2024). Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9.  Because the NYLL provides the same or greater recovery than the FLSA at all relevant times during Plaintiff's employment with Defendants, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff seeks unpaid minimum and overtime wages, statutory damages for wage statement and wage notice violations under the NYLL, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs, and a penalty for untimely payment of judgment.  (*See* Mem., ECF No. 11-2 at 10–14.)  Plaintiff submits a damages chart based on the allegations in the Complaint and Plaintiff's affidavit.  (*See* Ramirez Aff., ECF No. 11-3;  Damages Chart, ECF No. 11-7.)  Notably,  Plaintiff requests $93,940.00 for total damages but does not specify the amounts in each damages category.  (Mem., ECF

23

No. 11-2 at 6–8; Mulholland Affirmation Ex. D, ECF No. 11-7 (damages chart).)  The Court will address each category of damages in turn and will include Plaintiff's requested amounts, if any.[5]

### B.      Minimum Wages

The Court has already determined that Plaintiff is entitled to the minimum wage rates set forth in the NYLL and its regulations because they were higher than the federal minimum wage rate during the relevant period.  (*See* § VI.D.1.a., *supra*.)  Specifically, for employers with ten or fewer employees, the applicable minimum wage rates for employers in New York City, such as Defendants, were: (1) $12.00 per hour between July 15, 2018 through December 30, 2018; (2) $13.50 per hour between December 31, 2018 and December 30, 2019;  and (3) $15.00 per hour on or after December 31, 2019.  N.Y. Lab. Law § 652(1)(a)(ii); 12 N.Y.C.R.R. §§ 142-2.1(a)(1)(ii).  To calculate the minimum wage damages, the Court calculates the difference between Plaintiff's regular rate of pay and the applicable minimum wage, multiplied by the number of regular rate hours worked per week, and multiplied by the number of weeks during the relevant period.

Plaintiff worked for approximately 60 hours per week throughout his employment. (Compl., ECF No. 1 ¶ 44.)  From July 15, 2018 through November 15, 2023, Defendants paid

---

[5] The Court will not address Plaintiff's request for damages for failure to provide wage notices and wage statements, in violation of the WTPA, as these claims should be dismissed for lack of standing. (*See* § VI.D.2., *supra*.).  Additionally, to the extent that the Court's calculations differ from Plaintiff's due to rounding or other discrepancies, the Court's calculations will govern.

Plaintiff $11.67 per hour.  (*See* § IV.D.1.a., *supra*.)[6]  Using the formula described above,

Plaintiff is entitled to the unpaid minimum wages set forth in Table 1:

Table 1: Unpaid Minimum Wages

| Time Period | NYLL Min. Wage | Reg. Pay Rate | Diff. btwn. Min. Wage & Reg. Pay Rate | Reg. Rate Weekly Hours Worked | # Weeks[7] | Total Unpaid Min. Wages |
|---|---|---|---|---|---|---|
| 07/15/2018 to 12/30/2018 | $12.00 | $11.67 | $0.33 | 40 | 24 | $316.80 |
| 12/31/2018 to 12/30/2019 | $13.50 | $11.67 | $1.83 | 40 | 52 | $3,806.40 |
| 12/31/2019 to 11/15/2023 | $15.00 | $11.67 | $3.33 | 40 | 202 | $26,906.40 |
| | Total: | | | | | **$31,029.60** |

In contrast, Plaintiff assumes that the minimum wage rate for "large employers" with

eleven or more employees applies to his damages calculation.  (*See* Mem., ECF No. 11-2 at 7

(referring to wage rates for large employers between 2014 and 2018); *see also* Mulholland

Affirmation Ex. D, ECF No. 11-7 (applying large employer rates of $13.00 for July 15, 2018

through December 30, 2018, and $15.00 for December 31, 2018 through December 30, 2019).)

However, as noted, there is no evidence in the record regarding the Furniture Store's size or

Defendants' number of employees during the relevant period.  (*See* § VI.D.1.a., *supra*.)

"Given the lack of any support for Plaintiff's assumption," the Court will continue to apply the

---

[6] Plaintiff's damages calculations use November 15, 2023 as his last day of employment with Defendants. The Court accepts this reasonable approximation based on the Complaint and Plaintiff's affidavit, which only allege "November 2023" as the end date.

[7] "Weeks" refers to the number of weeks during the corresponding dates of employment in each row.

minimum wage rate for "small employers" as defined in the NYLL. *Espinoza*, 2021 WL 7903991, at \*6 (citing N.Y. Lab. Law § 652(1)(a)(ii)).[8]

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$31,029.60** for unpaid minimum wages.

### C.     Overtime Wages

As noted, under the FLSA and NYLL, Plaintiff is entitled to overtime compensation of at least one and one-half times his regular hourly rate for hours worked over 40 per week. *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. "Where a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'" *Brito*, 2022 WL 875099, at \*16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-2482 (DRH)(SIL), 2016 WL 7480358, at \*10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)). When a plaintiff is paid above the minimum wage, however, the "overtime compensation should be determined by multiplying [the] agreed upon wage rate by one and one-half." *Marvici v. Roche Facilities Maint. LLC*, No. 21-CV-4259 (AS)(JLC), 2023 WL 5810500, at \*7 (S.D.N.Y. Sept. 8, 2023), *adopted by* 2023 WL 6648902 (S.D.N.Y. Oct. 12, 2023).

---

[8] Plaintiff also calculates damages using the fluctuating work week ("FWW") method: calculate the "hourly 'regular rate'" for a given week by "dividing the fixed weekly wage by the total number of hours the employee actually worked during that week" then dividing the regular hourly rate in half and multiplying the hourly half-rate by the number of overtime hours and adding that to Plaintiff's fixed weekly wage. (*See* Mem., ECF No. 11-2 at 8–9) (citing *Thomas v. Bed Bath & Beyond Inc.*, 961 F.3d 598, 603 (2d Cir. 2020) and *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)). The Court finds that the FWW method is inapplicable here because Plaintiff cannot demonstrate that "the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage." *Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 130 (S.D.N.Y. 2018), *aff'd*, 961 F.3d 598 (2d Cir. 2020).

Plaintiff is entitled to one- and one-half times the applicable New York City minimum wage for all weekly hours worked over 40. Specifically, Defendants were required to pay Plaintiff the following overtime hourly rates: (a) $18.00 between July 15, 2018 through December 30, 2018 (*i.e.*, $12.00 x 1.5); (b) $20.25 per hour between December 31, 2018 and December 30, 2019 (*i.e.*, $13.50 x 1.5); and (c) $22.50 on or after December 31, 2019 (*i.e.*, $15.00 x 1.5). "Because Plaintiff has already been paid a weekly amount for these hours, the overtime wage deficiency is calculated by multiplying the difference between the paid rate and the overtime wage rate . . . by the total number of overtime hours worked" per week and multiplied by the number of weeks during the relevant period. *Ms. Wine Shop Inc.*, 643 F. Supp. 3d at 377. Plaintiff worked 60 hours per week, of which 20 hours should have been paid at the overtime rate. For example, between July 15, 2018, through December 30, 2018, he was paid at the regular hourly rate of $11.67 for all hours worked but should have been paid $18.00 for the 20 hours of overtime. The Court calculates his unpaid overtime for this period as $3,038.40 (*i.e.*, (($18.00 – $11.67) x 20 overtime hours x 24 weeks)). Applying this formula, Plaintiff is entitled to the total unpaid overtime wages listed in Table 2:

*Table 2: Unpaid Overtime Wages*

| Dates of Employment | NYLL Min Wage. | NYLL OT Pay Rate | Reg. Pay Rate | Diff. btwn OT & Reg. Pay Rate | Weekly OT Hours | # Weeks | Total Unpaid OT Wages |
|---|---|---|---|---|---|---|---|
| 07/15/2018 to 12/30/2018 | $12.00 | $18.00 | $11.67 | $6.33 | 20 | 24 | $3,038.40 |
| 12/31/2018 to 12/30/2019 | $13.50 | $20.25 | $11.67 | $8.58 | 20 | 52 | $8,923.20 |
| 12/31/2019 to 11/15/2023 | $15.00 | $22.50 | $11.67 | $10.83 | 20 | 202 | $43,753.20 |
| | Total: | | | | | | **$55,714.80** |

Plaintiff again applies the unsupported "large employer" minimum wage rate to calculate overtime damages for the period from July 15, 2018 through December 30, 2019. (See § VII.A., *supra*.)  For example, Plaintiff applies the "large employer" minimum wage rate of $13.00 from July 15, 2018 to December 30, 2018, and, thus, an overtime rate of $19.50 for that same period in his calculations.  The Court declines to apply Plaintiff's damages formula for overtime wages.

Therefore, the Court respectfully recommends that Plaintiff should be awarded **$55,714.80** for unpaid overtime wages.

### D.    Liquidated Damages

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount of their unpaid wages, unless the employer proves a good faith basis for believing that its underpayment of wages complied with the law.  *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)).   However, the Second Circuit "interpret[s] the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.  Double recovery is generally disfavored."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  A court may award damages under whichever statute allows for greater recovery.  *See id.*

Here, where Defendants have  defaulted and therefore make no showing that they acted in good faith when they underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate.  As noted, Plaintiff's calculated damages for unpaid minimum wage and overtime compensation are incorrect.  (*See* §§ VII.B.–C., *supra*.)  Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$86,744.40** in liquidated damages under the NYLL.

### E.      Pre-Judgment Interest

The FLSA does not allow for any pre-judgment interest where plaintiffs also receive liquidated damages. *Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 n.7 (2d Cir. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). "However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP), 2025 WL 959096, at *11 (E.D.N.Y. Feb. 6, 2025) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Collado v. JS Food & Grocery Corp.*, No. 23-CV-6617 (LDH)(CLP) (E.D.N.Y. Mar. 31, 2025). Accordingly, Plaintiff is eligible to recover pre-judgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per year, but not on liquidated damages. *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 60 & n.7 (E.D.N.Y. 2024) (citing N.Y. C.P.L.R. § 5004).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Courts generally calculate pre-judgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *See, e.g.*, *Rosas*, 2024 WL 4131905, at *17.

29

As discussed, the Court recommends that liquidated damages should be awarded under the NYLL, and thus, pre-judgment interest may be awarded.  (*See* § VII.D., *supra*.)  The Court calculates pre-judgment interest by determining the midpoint of the relevant period.  The Court selects March 15, 2021, the midpoint between the earliest date for which Plaintiff can recover damages for unpaid wages (July 15, 2018) and Plaintiff's end date of employment (November 15, 2023), as a reasonable intermediate date.  Applying a nine percent per year rate, the Court respectfully recommends that Plaintiff should be awarded **$39,099.15** in pre-judgment interest to increase at a rate of **$21.39** per day.[9]

### F.        Attorneys' Fees

Plaintiff seeks attorneys' fees of $3,187.50 based on the 8.5 hours of work by attorney Colin Mulholland at a rate of $375.00 per hour.  (Mem., ECF No. 11-2 at 12–13.)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) (citing 29 U.S.C. § 216(b) & N.Y. Lab. Law §§ 198(1-a), 663), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  "The method for determining reasonable attorneys' fees in this Circuit is based on

---

[9] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages for Plaintiff ($86,744.40) by 9%, then dividing by 365, for a daily rate of $21.39.  The daily rate is then multiplied by 1,828, the number of days between March 15, 2021 and March 17, 2026, the date of this Report & Recommendation.

several factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases." *Treyger v. First Class Furniture & Rugs Inc.*, No. 21-CV-2902 (EK)(RLM), 2022 WL 543026, at *7 (E.D.N.Y. Jan. 10, 2022) (citing *Arbor Hill*, 522 F.3d at 186 n.3, 190), *adopted by* 2022 WL 541795 (E.D.N.Y. Feb. 23, 2022). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry*, 2022 WL 1018791, at *14.

### 1.   Hourly Rate

Courts must determine if the requested hourly rate is "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. "In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *6 (E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024) (quoting *Esquivel*, 2023 WL 6338666, at *17); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 241–43 (E.D.N.Y. 2025) (noting the considerable inflation that has occurred in recent years and the Court's obligation to award attorneys' fees commensurate with current market conditions).

Plaintiff requests an hourly rate of $375.00 for attorney Mulholland. (Mem., ECF No. 11-2 at 12.)  Mr. Mulholland is a solo practitioner who focuses on FLSA and employment

31

claims in New York City, was admitted to practice law in 2013, and has litigated many FLSA and employment claims throughout his career, including over 200 cases in the Eastern and Southern Districts of New York. (*Id.*) Mr. Mulholland has been awarded similar rates in other FLSA default cases and the Court finds that this rate remains reasonable for an attorney with his experience and work quality. *Bocon*, 2025 WL 832730, at *5; *Cisneros v. Zoe Constr. Corp.*, No. 21-CV-6579 (DG)(CLP), 2023 WL 5978702, at *13 (E.D.N.Y. Aug. 10, 2023), *adopted by* Order Adopting R. & R., *Cisneros v. Zoe Constr. Corp.*, No. 21-CV-6579 (DG)(CLP) (E.D.N.Y. Aug. 31, 2023). Therefore, the Court respectfully recommends an hourly rate of $375 for counsel's services.

### 2. Hours Expended

"For purposes of determining a reasonable fee, the number of hours billed must also be reasonable[.]." *Abreu*, 2019 WL 2526087, at *5. "The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 211 (E.D.N.Y. 2019). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up).

The Court also finds that the number of hours expended in this case is reasonable for Mr. Mulholland. According to the billing records, Mr. Mulholland has expended a total of 8.5 hours on this case. (*See* Mulholland Aff. Ex. E, ECF No. 11-8.) This total reflects the tasks Mr. Mulholland completed to prosecute the case, such as drafting the Complaint and the instant

motion, and does not include any unnecessary billing.    (*Id.*)    Accordingly, the Court respectfully recommends that Plaintiff should be awarded **$3,187.50** in attorneys' fees.[10]

### G.    Costs

Plaintiff seeks $1,005.00 in costs, including court filing and service of process fees. (Mem., ECF No. 11-2 at 12.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiff is entitled to all requested costs totaling $1,105.00.  *First*, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  *Second*, Plaintiff is entitled to the $405.00 filing fee for this case because the docket reflects that he paid the fee. (ECF No. 1 Dkt. Entry.)  Plaintiff also submits invoices to support process server fees of $700.00.  (ECF No. 13.)  However, because Plaintiff only seeks $1,005.00, the Court will only award that amount.

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of **$1,005.00** in costs.

### H.    Post-Judgment Interest

"[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961 and quoting *Lewis v. Whelan*, 99 F.3d

---

[10] The attorneys' fees are calculated as follows: ($375 hourly rate x 8.5 hours).

542, 545 (2d Cir. 1996)).  Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## I.      Fifteen Percent Increase Penalty

Plaintiff further seeks an automatic increase of 15% of any unpaid amount of the judgment still pending after 90 days following the entry of judgment, per NYLL § 198(4). (Mem., ECF No. 11-2 at 14.)  Where there is a cause of action under the NYLL,

> [a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law § 198(4).  "The increase applies only to damages awarded under state law." *Perry*, 2022 WL 1018791, at *14 (collecting cases).

"Courts in this District have simultaneously awarded post-judgment interest under 28 U.S.C. § 1961 and have held the automatic increase penalty under the NYLL to apply."  *See e.g.*, *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM)(RER), 2022 WL 4646866, at *12–13 (E.D.N.Y. Aug. 29, 2022), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022) (collecting cases); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418 (NJC) (JMW), 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *adopted by* 2024 WL 2891798 (E.D.N.Y. June 10, 2024) (same).  *But see Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2022 WL 1460272, at *3 (E.D.N.Y. May 9, 2022) and *Quesada v. Hong Kong Kitchen Inc.*, No. 20-CV-5639 (BMC), 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021) (holding that the NYLL penalty can only apply to judgments entered by a New York state court, and does not apply to federal judgments).  In other words, "the one-time, late payment penalty is

34

different in kind from a post-judgment interest award which accrues in perpetuity until the judgment is satisfied," and therefore is warranted in this case. *Diaz*, 2022 WL 4646866, at *13.

Accordingly, the Court respectfully recommends that Plaintiff's damages awarded under the NYLL should be increased by 15% if Defendants fail to timely satisfy the judgment pursuant to NYLL § 198(4).

## VIII.  **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 11 should be **granted in part** as follows: (1) the Clerk of Court should enter the proposed default judgment at ECF No. 11-9 (as amended)[11] against Defendants Nahid Furniture Inc., Ali Furniture Corp, Nahid Fabrics Fashion & Furniture Inc., Abidul Islam Ali, and Sazzad Ali, and (2) Plaintiff should be awarded damages in the amount of **$216,780.70**, which includes: (a) **$31,029.60** in unpaid minimum wages; (b) **$55,714.80** for unpaid overtime wages; (c) **$86,744.40** in liquidated damages; (d) **$39,099.40** in pre-judgment interest to increase by **$21.39** per day until the entry of judgment; (e) **$3,187.50** in attorneys' fees; (f) **$1,005.00** in costs; (g) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a); and (h) an increase of 15% of any unpaid amount of the judgment still pending after 90 days following the entry of judgment, per NYLL § 198(4).  All other requests for relief should be **denied**.

---

[11] The amendments to the proposed judgment at ECF No. 11-9 are revising the damages to be consistent with this Report and Recommendation, if adopted, or the Court's order, if modified.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to all Defendants at 1051 Liberty Avenue, Brooklyn, New York 11208 and to Defendants Abidul Islam Ali and Sazzad Ali at 105-06 80th Street, Floor 1, Ozone Park, New York 11417.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Reyes.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 17, 2026

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

36